Brenner v. The New York City Department of Education. Good morning, may I proceed? This is an appeal of a summary judgment determination in an employment discrimination matter. As your honors are aware, this court has continually advised that and counseled against dismissing discrimination claims at summary judgment where intent is at issue. It's our position that summary judgment in this case was improperly granted in that there were issues of fact and issues as it relates to the intent of the, I'll call bad actor, the principle in this matter that would have and should have warranted a denial of summary judgment so factual issues could be decided by a jury. The two things that I find are of utmost importance to point out at the beginning is that there were two points within the judge's decision, excuse me, where he highlighted certain factual issues that went towards intent and resolve at summary judgment, then from our perspective went beyond the scope of what is supposed to occur on summary judgment. Involved itself in issue determination instead of issue identification and resolve those factual issues. The first point was where the court explicitly said that it would be difficult to say that a reasonable juror would not infer a discriminatory animus towards white teachers based on comments that the principal made regarding white teachers negatively impacting black students. Effectively what this case is, is this is a principal who saw color and verbally spoke about white and black, saw age and verbally spoke about old, young, and saw religion and verbally spoke. The question would be whether that motivated the determination, right? Sure. So what is the evidence of that? Well, the evidence that the comments that he made motivated determination are that, there's numerous ones. There's the fact that the treatment that he was subjected to, the other employees similarly situated that were not in his protected class were not similarly subjected to it. The client was given unsatisfactory ratings by two different principals, yes? Yes. He was given- Were there a number of parents who complained about your client's actions? With respect, I'll address both of those if I may, your honor. With respect- When you're doing that, there's also, there's more, right? The independent consultant who basically said he was a disaster. I'll address that as well. So- I mean, that's why your burden is particularly high here. We've said that in Collins versus New York City Transit, is that there was an unbiased adjudicator who had the power to prevent the termination and did not. Sure, and within Collins, there are circumstances whereby, notwithstanding the determination by an arbitrator, the case may proceed, and I think that's applicable here. The question is whether you've got anything other than three assertions here, so help us out. Well, I think we do. So with respect to the items that were just raised, the negative review that was received by the prior principal, there was testimony on the record that reflected that the principal explicitly told my client that you don't deserve this, but I'm being pressured to give some negative reviews and you should have grieved this. Did he grieve it? He did not, because this was after the fact. And that negative review was on the books, so to speak. It was on the books, but there's factual support for the fact that that was not truly reflective of his performance prior to Principal Katori, who was the principal at issue in this case. The parent letters, there's evidence in the record to support the fact that my client actually told and the environment in his class was such that he felt that if letters came from parents, then things might be done to remedy the environment, because he was being placed in a position where he was getting a large number of students with high behavioral issues when he would ask for those things to be addressed. It would take months for that to be addressed, and it was creating an environment that was setting him up to fail. With respect to the 3028, which is the arbitration at issue, where he was terminated. I believe what Collins indicates that where you can establish either that the decision was wrong as a matter of fact or that it was so compromised by bias that that would allow for the claim to proceed. What we have here is we have numerous comments by the principal here evidencing a discriminatory intent towards my client and my client testifying and providing evidence not just with respect to him but with witness statements where he indicates that the record that was created by Principal Katori was fabricated such that- It's the bias of the hearing officer though, isn't it? I don't, well it's the bias of the hearing officer but I- It's the Collins case. There's bias on the hearing officer, maybe we shouldn't give it much weight. But to follow up on Judge Radji's question, you got a very harsh, harsher, very unqualified decision by the hearing officer in this case. Where he said, in all my years, I've never seen such an effort to help him, basically, the second to last paragraph, so how do you get over that? Is there any bias on the part of Matthews? There's not bias on the part of the arbitrator, and that's not what we're arguing. But I believe in Collins, one of the ways you can overcome an arbitration decision is where you can show that the record that was relied upon by the hearing officer was essentially false and was manufactured. And in fact, the lower court, again, to our point- There's no argument to the hearing officer who didn't find that so. I mean, you're basically asking us to make findings contrary to those of the hearing officer. The hearing officer didn't find that any of this was fabricated insofar as it explained his termination. And that's the point, I mean, you're arguing, to use the standard context, that you've raised a prima facie case. They've come forward with a ground, a non-discriminatory ground for terminating him. An independent adjudicator found that termination was warranted. Now the question is, what's the argument that that's pretext? What's the argument that it's a pretext that they fired him because he wasn't qualified? Well, and our argument is because the record that was created and that was then relied upon by the arbitrator was fabricated in a desire. And with a motivation being to terminate him due to his age and due to his race. But all five witnesses testified before him, right? Yes. Okay, Tory, Freedman, Braithwaite, Rockman. Yes. Holstein. So he evaluated their testimony. Sure, but he was evaluating that testimony from, in the context of reviewing those, that record that they created and assessing that record they created, not from the context of a Title VII discrimination claim. And whether there was a motivation that these documents were created and manufactured when they weren't true. To that point, it wasn't before him to decide whether Braithwaite, who told my client that an observation was satisfactory, only to then communicate with Katorian and do a 180 and issue him a negative observation, whether that was discriminatorily motivated. So, what that arbitrator- How are you going to back word that your client argued in the arbitrator that it was fabricated, that this evidence was not? Yes. I understand that the arbitrator had no obligation or indeed authority to decide whether there was discrimination going on here. But he did have the authority and indeed obligation to assess whether the evidence before him was credible. And he did find that it was credible. Well, he determined that it was credible based on what was before him. But what I would argue is that what was not before him and what was not, what should not have been, what was not properly before him was the idea of the motivation behind this discipline and the record that was created. So the record that was created was, and the lower court specifically says, because most of Plaintiff's negative performance reports came from Katorian. Those reports appear to have in large part influenced the arbitrator. I have to consider whether there is some issue as it relates to that. And I think that's sort of the point, where he identifies that as a potential issue. And that there are facts, and by the way, of comments that were made by Katory. Discipline that was issued to him that was not issued to other teachers. Disparate treatment towards my client that were- We understand that this is all with you in your brain. You want to reserve some time for rebuttal, right? Absolutely. All right, thank you. Thank you. Good morning, your honors. Ben Welch, and on behalf of the New York City Department of Education and Principal Antonio Katori. Now, I think the court has singled out the central issue in this case, which is that the record of Mr. Brenner's performance, his negative performance, is voluminous. And it spans many years. And it's not just documented by the principal, but it's documented by numerous individuals, both within the school's administration and without the school's administration, that all independently assess Mr. Brenner as subpar. So with respect to, for example, parents. Parents independently, even if parents were told by Mr. Brenner to write to the school. Their complaints were that Mr. Brenner had not checked their children's homework for two months. It was not responding to any emails that they had sent to him. One parent complained that Mr. Brenner's performance is so poor that my child no longer enjoys school. I think those complaints speak for themselves. The latter may not be that telling, but okay. Perhaps that's true. Well, I suppose her enjoyment was lessened as a result. And then, of course, the independent evaluator, who is specifically tasked with helping Mr. Brenner's performance, tried to train Mr. Brenner over a period of months and identified the very same inadequacies that Mr. Braithwaite and Mr. Katori and others had identified and found that there was simply no progress at all in improving in these areas. And that Mr. Brenner was, quote, unquote, unsatisfactory as a teacher. There is simply no basis to undermine that incredible evidence of poor performance. And then, of course, it is further buttressed by the fact that it is evaluated by a independent labor arbitrator, which there is no allegation of bias, who independently determined that that record merited termination. That breaks the causal link, and because Mr. Brenner is unable to overcome or rebut the fact of his poor performance, that summary judgment is eminently appropriate in this case. So I think the other, I want to spend a little bit of the time on the supposed comments that Mr. Brenner relies on so heavily. There's a number of observations about those. Number one, they are not temporally proximate to the decision at all. Mr. Brenner's comment, Mr. Brenner's reliance on a comment with respect to the principal saying you're harming the black children in your class was made in 2009. That's four years before the decision to terminate him and three years before the initiation of incompetence charges. And mind you, Mr. Brenner was already experiencing poor performance at that point. Principal Katori could have acted earlier. Instead, he continued to offer Mr. Brenner further mentorship, further support, further teaching tutorship to no avail. It was only until the independent evaluator, through the collective bargaining agreement, gave Mr. Brenner months of training and determined that simply no progress could be made. Did Principal Katori finally act, which I think was necessary to do, and initiate the incompetence hearings? The other comments that Mr. Brenner relies on are similarly in opposite. He makes an allegation through the affidavit of one of his colleagues, who retired two years before he was terminated, that Principal Katori said at some meeting that white teachers are harming these black children. Now, it's important to recognize that, first of all, the demography of the school was such that it was overwhelmingly African American. So I think that while I agree that maybe a weak inference could be created by the comments, it has to be taken in the context of the case as a whole. And in this case, merely referencing the fact of race and  That's especially true where the comment was not made about Brenner specifically. It had nothing to do with the actual employment decision that Mr. Brenner is challenging. It's not related to the procedures or the actual decision-making process, which the court has found to be a relevant criteria in the analysis. And again, it was not temporally proximate. The colleague that Mr. Brenner relies on apparently retired in 2010, and she overlapped with Principal Katori for a four-year period. So it could have happened anywhere between six years and two years before Mr. Brenner's termination. That is simply way too far of a temporal lapse of time for there to be a real true inference of discrimination in the case. There's a mention of a recorded comment, though, that was recorded by the plaintiff. So it was made to him about hurting little black kids, though, right? That's correct. I think you were focused on the workman. I think her name was workman. Correct. Where she said that he had said something about hurting black kids at a meeting. Correct. And it was years before his termination. But there was a specific recording of Katori saying in 2009 something along the same lines, right? There was. And the district court found that to be troubling, right? The district court noticed it and recognized, I think correctly, that that supported Mr. Brenner's prima facie case. The comment was about Brenner, although, mind you, it was made approximately three to four years before his termination, which I think, again, certainly attenuates the causal link. But even if that comment could give rise to a weak inference, we have, again, we have this overwhelming evidence of poor performance, which was independently evaluated by a labor arbitrator after a full and fair hearing that apparently created 1,000 pages of transcripts in which 100 exhibits were introduced into evidence. And that arbitrator looked at the evidence of Mr. Brenner's performance that was introduced by numerous individuals, not just Principal Katori, and determined that that merited his termination. And so even if we, when we evaluate the, whether a rational fact finder can find discrimination on a particular case, it's important to weigh, not to weigh, but to evaluate the evidence that the strength of the prima facie case, whether the employer has substantially established their legitimate reasons, which here are like, are overwhelmingly established, and then determine whether a reasonable fact finder could find discrimination. And here, it's simply impossible. I think even without the labor arbitrator decision, the overwhelming evidence of poor performance speaks for itself. But there simply is no way to break the causal link as a result of the independent determination pursuant to Collins and Cortes in cases of that ilk. Unless the court has any further questions, we respectfully request that the court affirm the judgment of this report. Thank you so much. This will be thought of. We'll now hear from you. Okay. Just to address some of the points that were just raised, what was just discussed as far as the arbitrator. The arbitrator didn't review this record by virtue of assessing the credibility of the record based on the comments that are at issue here. I mean, we have a situation here where it's very alarming to me that a case could be dismissed on summary judgment without. Were those comments presented to the arbitrator? No. I don't believe so. I wasn't there, but there's nothing in the record to reflect that those comments were before the arbitrator, that the arbitrator would have considered them. And I don't think it would have been proper for him to consider them. And he certainly wouldn't have considered them with. I mean, he wouldn't be making any findings as to discriminatory intent that could have affected his assessment of the credibility of the criticisms. So, I wouldn't, I mean, why wouldn't your client have put before the arbitrator anything that suggested that he wasn't really unqualified? I can't specifically speak to why his counsel at the time did not decide to utilize that. I mean, I can speak on personal experience having handled those hearings. A lot of those arbitrators immediately look to not delve into those types of areas and want to focus directly on the record. But I can't say whether that was the case here. My concern here is we are bound by precedent that says when you've got an independent adjudicator making the finding that results in the termination, you have to present strong evidence that the decision was wrong as a matter of fact, or that the impartiality of the proceeding was somehow compromised. And I'm not sure that just saying that, well, the independent decision was infected by the principal's negative evaluations, which were wrong, is enough. That's a conclusion. I'm not sure what we've got that's evidence here. Well, what we have are a couple of things. We have one, the testimony regarding Assistant Principal Braithwaite, who indicated that, which indicates that the negative observation that Mr. Brenner received was in fact tainted by Katory because it was positive until Katory spoke with Braithwaite. We have number two, a witness who testifies that Mr. Deberry, who was another administrator that Katory used to try to effectuate his motivations here, approached them and tried to get them to issue a false statement regarding poor performance regarding Mr. Brenner. So there's evidence based on third party witnesses as well as my client's testimony that there were things that were being fabricated here. And so there is that evidence that exists here. It's not just conclusory, there are actual witnesses and evidence to support the potential that this record was manufactured. And that the determination by the arbitrator was not based on, was not accurate because the evidence that was put before the arbitrator was tainted. Thank you very much. Would I be able to raise one more point? Is that? Your time is up, but tell us what it is, because is it something that's not brief? I believe it is in my brief, so rather than take more time, I'll rest. Thank you. Thank you.